J-A12026-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MIRIAM LISSER POLIS | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| ROBERT POLIS | |
| Appellant | No. 1976 EDA 2015 |

Appeal from the Order Entered May 29, 2015
In the Court of Common Pleas of Montgomery County
Civil Division at No(s): 1992-22326

BEFORE:  BENDER, P.J.E., PANELLA, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY PANELLA, J.                    **FILED OCTOBER 07, 2016**

Appellant, Robert Polis ("Father"), appeals from the order entered in the Montgomery County Court of Common Pleas, granting Miriam Lisser Polis ("Mother") certain expenses owed, ordering Father to purchase and maintain a life insurance policy, which will cover his remaining alimony arrearages pursuant to the parties' 1992 Property Settlement Agreement ("PSA"), and finding Father not in contempt of the PSA. We affirm.

The trial court opinion sets forth the relevant facts and procedural history of this case; therefore, we see no reason to restate them. **_See_** Trial Court Opinion, filed October 28, 2015, at 1-5.[1]

_____

[*] Former Justice specially assigned to the Superior Court.
[1] We note a few errors in this trial court opinion that we correct here: the order from which Father appealed was filed on May 29, 2015; the parties'
_(Footnote Continued Next Page)_

Father raises the following issues for our review:

DID THE HONORABLE LOWER COURT ERR IN FAILING TO APPLY THE [FOUR]-YEAR CONTRACT STATUTE OF LIMITATIONS TO [MOTHER'S] PETITION AND, THEREFORE, DISMISS [THE] SAME?

DID THE HONORABLE COURT ERR IN REFUSING TO CONSIDER THE TESTIMONY OF [FATHER] AS INADMISSIBLE HEARSAY THAT THE $600,000.00 FIGURE STIPULATED BEFORE THE HONORABLE BERNARD MOORE ON MAY 6, 2002, INCLUDED ALL [OF MOTHER'S] CLAIMS TO DATE[?]

DID THE HONORABLE COURT ERR IN REFUSING TO FIND THAT THE $600,000.00 ARREARS STIPULATED BEFORE THE HONORABLE BERNARD MOORE ON MAY 6, 2002, INCLUDED ALL [OF MOTHER'S] CLAIMS TO THAT DATE WERE THE COURT RECORDS SHOWED A LOWER FIGURE ABOUT [TWO] YEARS PRIOR TO THAT DATE[?]

DID THE HONORABLE LOWER COURT ERR IN REFUSING TO FIND THAT THE $600,00.00 ARREAR STIPULATED BEFORE THE HONORABLE BERNARD MOORE ON MAY 6, 2002, INCLUDED ALL [OF MOTHER'S] CLAIMS TO THAT DATE WHEN [MOTHER'S] PETITION STATED ARREARS (NON-CONTRACT) WERE $550,000.00 AND ALL HER CONTRACT CLAIMS TO MAY 6, 2002, WERE RAISED IN HER PETITION?

Father's Brief, at 12.

On appeal from an order interpreting a marital settlement agreement, we must decide whether the trial court committed an error of law or abused its discretion. *See Tuthill v. Tuthill*, 763 A.2d 417, 419 (Pa. Super. 2000) (*en banc*). "We do not usurp the trial court's fact-finding function." *Id*. (citation omitted).

*(Footnote Continued)* —————————————

divorce decree was filed on June 21, 1994; and the court's memorandum opinion and order were filed on December 22, 2014.

- 2 -

> "[J]udicial discretion" requires action in conformity with law on facts and circumstances before the trial court after hearing and due consideration. Such discretion is not absolute, but must constitute the exercises of sound discretion. This is especially so where, as here, there is law to apply. On appeal, a trial court's decision will generally not be reversed unless there appears to have been an abuse of discretion or a fundamental error in applying correct principles of law. An "abuse of discretion" or failure to exercise sound discretion is not merely an error of judgment. But if, in reaching a conclusion, law is overridden or misapplied, or the judgment exercised is manifestly unreasonable or lacking in reason, discretion must be held to have been abused.

*In re Deed of Trust of Rose Hill Cemetery Ass'n Dated Jan. 14, 1960*, 590 A.2d 1, 3 (Pa. 1991) (internal citations omitted). "Because contract interpretation is a question of law, this Court is not bound by the trial court's interpretation." *Stamerro v. Stamerro*, 889 A.2d 1251, 1257 (Pa. Super. 2005) (citation omitted).

Additionally, our standard of review concerning challenges to the admissibility of evidence is as follows:

> Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the trial court's decision absent a clear abuse of discretion. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

*Commonwealth v. Young*, 989 A.2d 920, 924 (Pa. Super. 2010) (internal citations omitted). Hearsay is defined as "a statement that (1) the declarant does not make while testifying at the current trial or hearing; and (2) a party offers in evidence to prove the truth of the matter asserted in the

- 3 -

statement." Pa.R.E. 801(c). Hearsay evidence is inadmissible unless an exception to the rule against hearsay applies. *See* Pa.R.E. 802. This Court has held that it is within a lower court's discretion to preclude hearsay testimony *sua sponte*, even when the opposing party had failed to object to it. *See In re R.T.*, 778 A.2d 670, 683 (Pa. Super. 2001).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Gail Weilheimer, we conclude Father's issues on appeal merit no relief. The trial court comprehensively discusses and properly disposes of the issues presented on appeal. *See* Trial Court Opinion, filed October 28, 2015, at 8-10; Trial Court Opinion, filed December 22, 2014, at 2-5.[2] We affirm based on those two decisions.

Order affirmed.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary


Date: 10/7/2016

_____

[2] We also note a couple of errors in this trial court opinion that we correct here: the master report was dated May 9, 2014; and the court's order deferring action on Mother's counter petition was filed on July 31, 2001.

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA
CIVIL ACTION – LAW

MIRIAM LISSER POLIS : NO. 1992-22326
:
vs. : **PACSES NO. 831001804**
:
ROBERT BRUCE POLIS :

## **MEMORANDUM OPINION AND ORDER**

The filings presently before the Court are as follows: Robert Bruce Polis's ("Father's") Petition to Correct Court Records filed November 22, 2013 ("Petition to Correct") with the Montgomery County Domestic Relations Office ("DRO"), Miriam Lesser Polis's ("Mother's") Petition for Contempt and Enforcement of the Parties' Property Settlement Agreement filed May 4, 2014 ("Mother's Contempt Petition"), Mother's Support Exceptions filed May 23, 2014 ("Mother's Support Exceptions") and Father's Support Exceptions filed May 28, 2014 ("Father's Support Exceptions").

For the reasons set forth below, we hold (1) All of the remaining arrears in this matter are related to alimony; (2) Father's obligations in the Property Settlement Agreement related to Rachel Polis's ("Child's") (a) College expenses, (b) unreimbursed medical/dental expenses, (c) summer camp expenses, (d) synagogue expenses, and (e) Father's life insurance coverage are not included in the $600,000.00 arrearage total set forth in the Court's May 6, 2002 Order; (3) The parties are scheduled for a hearing on Mother's Contempt Petition on May 12, 2015, at which time the Court shall fully address Mother's claims and Father's defenses.

Initially, the Court notes that Father's Petition to Correct does not appear to be properly before us considering Father only filed it at DRO. The Court further observes, however, that DRO issued a Master Report dated May 5, 2014, in response to Father's Petition to Correct.

Both Parties' exceptions to this Master Report (Mother's Support Exceptions and Father's Support Exceptions) allow the Court to address the issues raised in Father's Petition to Correct.

On March 1, 1996, this Court issued an Order and an accompanying stipulation (the "March 1996 Stipulation and Order") directing, *inter alia*, that Father's obligations under the June 1, 1992 Property Settlement Agreement ("PSA") were to pay to DRO (1) $4,000.00 per month in alimony for six (6) years effective June 1, 1992, (2) $4,000.00 per month in support of Child, retroactive to June 1, 1992, and (3) $2,000.00 per month unallocated for fifty (50) months retroactive to June 1, 1992. This resulted in an aggregate obligation of $10,000.00 per month. The stipulation directed that arrearages would be calculated from the effective date of June 1, 1992. Further, the stipulation directed that Father's **ADDITIONAL OBLIGATIONS** under the PSA are unaffected by this stipulation.

When reading the March 1996 Stipulation and Order in tandem with the PSA, it is apparent that the directive to pay $4,000.00 per month in APL emanates from paragraph 5 of the PSA, the directive to pay $4,000.00 per month in child support emanates from the first sentence of paragraph 6 of the PSA, and the directive to pay $2,000.00 per month unallocated emanates from paragraph 10 of the PSA. There is no indication that the March 1996 Stipulation and Order in any way addressed the remaining portions of paragraph 6 of the PSA; to wit, Father's obligation to pay Child's unreimbursed medical expenses, camp expenses, synagogue expenses or Child's college expenses. The March 1996 Stipulation and Order specifically states that Father's "additional obligations under the PSA are unaffected", and the language of paragraph 6 of the PSA reads that Father's additional obligations referenced above are "in addition" to his baseline $4,000.00 monthly child support obligation. The arrearages which began to accrue

following the March 1996 Stipulation and Order were related to Father's $10,000.00 monthly obligation.

Father made minimal payments over the next several years and accumulated a significant arrearage balance. On June 7, 2000, Father filed a Petition to Modify [the PSA]. On August 15, 2000, Mother filed an Answer and Counter-Petition for Contempt and Enforcement of [the PSA]. In her Counter-Petition, Mother attempted to enforce the agreement as to payments owed by Father under the agreement including, but not limited to, college expenses, summer camp and synagogue. On July 24, 2001, the Court issued an Order deferring action on Mother's Counter-Petition and ordered Father to pay $3,000.00 towards outstanding arrears.

On December 21, 2001, Father filed another Petition to Modify [the PSA].[1] On May 3, 2002, Mother filed an Answer and Counter-Petition for Contempt and Enforcement of the [PSA]. In her Counter-Petition, Mother again attempted to enforce the agreement as to payments owed by Father under the agreement including, but not limited to, college expenses, summer camp and synagogue. On May 6, 2002, the Court, following a hearing, set Father's arrearages at $600,000.00 and directed Father to pay Mother 50% of his net income from all sources but not less than $2,000.00/month (the "May 2002 Order"). Despite Mother's filing of a counter-petition three (3) days prior to the hearing which requested the additional funds Mother alleges Father owes her under the PSA, the record contains no indication the Court considered this request when it issued the May 2002 Order. Father's arrearages leading up to this hearing had corresponded to amounts the Court ordered him to pay under the March 1996 Stipulation and Order. The transcript from the hearing only refers to the arrearages which have been accruing since the March 1996 Stipulation and Order. The May 2002 Order also refers only to arrearages,

---

[1] The Court notes that paragraph 4 of Father's petition refers to Child's summer camp and college expenses as a separate obligation from the $4,000.00 base child support amount.

without any indication that the Court is incorporating additional obligations into the $600,000.00 arrearage total. As discussed in more detail below, neither party has presented any information to the Court indicating that the $600,000.00 arrearage total is related to any obligations beyond those detailed in the March 1996 Stipulation and Order.

Following the May 2002 Order, Father consistently paid the amounts due under the Order and began to lower his arrears balance. On November 22, 2013, Father filed his Petition to Correct in an attempt to have DRO confirm that he had paid the portion of the $600,000.00 arrearage total related to child support and that the remainder corresponded to his alimony obligations. On May 4, 2014, Mother filed a Petition for Contempt and Enforcement of the Parties' Property Settlement Agreement. Mother claimed Father still owed her funds related to, *inter alia*, Child's college, camp and synagogue expenses. Father filed an answer to Mother's petition alleging that these amounts were all included in the $600,000.00 arrearage total detailed in the May 2002 Order and that he has been paying these amounts in accordance with the Court's Order. The Master filed an Order dated May 5, 2014 related to Father's Petition to Correct. This Order held that Father had paid all of the $600,000.00 arrearage total related to child support and that his remaining arrears were related to alimony. Mother filed her support exceptions to this Order on May 23, 2014 and Father filed his support exceptions to this Order on May 28, 2014. This Court scheduled a hearing on all of the outstanding petitions for December 15, 2014 but, to date, has only addressed Father's Petition to Correct and Mother's and Father's Support Exceptions.[2]

---

[2] The Court informed the parties it would make a ruling based on these three petitions and, depending on the outcome of this ruling, a further hearing on Mother's Contempt Petition would be scheduled for May 12, 2015.

During the hearing, neither party presented the Court with any admissible or relevant evidence which would cause the Court to conclude that the $600,000.00 arrearage total set forth in the May 2002 Order represented any monies beyond those mandated in the March 1996 Stipulation and Order. Specifically, Father attempted to present inadmissible hearsay regarding some type of discussion between his attorney and Mother's attorney at the time of the May 2002 Order that the $600,000.00 arrearage total would include all of the other expenses including, but not limited to, college, camp and synagogue. Consequently, because the child support portion of $600,000.00 arrearage total corresponds only with Father's original $4,000.00 per month baseline child support obligation set forth in the March 1996 Stipulation and Order, we will not include any of the other amounts (ie: summer camp, college, synagogue, etc.) in our analysis of how much of the $600,000.00 arrearage total relates to child support.[3] Our review of the record and the DRO audit performed on February 7, 2014 (attached to both parties' support exceptions) leads this Court to conclude that Father has paid the child support portion of the $600,000.00 arrearage total in full. This Court agrees with the conclusion of the DRO master that all of the child support arrears have priority over the alimony arrears (*See* Pa.R.C.P. 1910.17(d) which places child support arrears in a higher priority position than remaining spousal support or alimony arrears). Therefore, Father has paid off the child support portion of the $600,000.00 arrearage total.

This Order is not a ruling as to the veracity of Mother's Contempt Petition. The Court shall fully address Mother's claims and Father's defenses at the hearing scheduled for May 12, 2015.

---

[3] Some of these amounts, including the funds related to Child's college expenses, would not qualify as child support amounts anyway.

## ORDER

AND NOW, this 18th day of December, 2014, after a hearing with both parties present, it is hereby **ORDERED** and **DECREED** as follows:

### Father's Petition to Correct Court Records filed November 22, 2013 ("Petition to Correct") with the Montgomery County Domestic Relations Office, Mother's Support Exceptions filed May 23, 2014 and Father's Support Exceptions filed May 28, 2014

All of the remaining arrears in this matter are related to alimony. Father paid off the remaining child support arrears in 2010. DRO is hereby ordered to correct their records so that $2,731.84 in 2010, $28,636.00 in 2011, $26,393.00 in 2012, $24,187.82 in 2013 are deducted from Father's remaining alimony balance of $278,745.84. DRO is further directed to determine the amount of Father's payments in 2014 to date and to deduct these payments from Father's remaining alimony balance. All future payments are directed to be deducted from Father's alimony balance. DRO is further ordered to lift any restriction on Father's passport and any other restrictions which may currently be in place due to child support arrearages.

### Mother's Petition for Contempt and Enforcement of the Parties' Property Settlement Agreement filed May 4, 2014

Father's obligations in the PSA related to Child's (1) college expenses, (2) unreimbursed medical/dental expenses, (3) summer camp expenses, (4) synagogue expenses, and (5) Father's life insurance coverage are not included in the $600,000.00 arrearage total set forth in the May 2002 Order. Father's alimony obligations detailed in paragraph 5 of the PSA, child support obligations detailed in the first sentence of paragraph 6 of the PSA, and the $100,000.00 obligation detailed in paragraph 10 of the PSA are determined to be included in the $600,000.00 arrearage total and, accordingly, are included in the funds Father pays to DRO monthly.

The parties are scheduled for a hearing on Mother's Contempt Petition on May 12, 2015, at which time the Court shall fully address Mother's claims and Father's defenses. The parties are expected to present evidence as to Mother's demand for the monies owed in accordance with the terms of the PSA. Should Father present a claim that Child had a college fund that should have been applied to tuition obligations, he will be expected to present evidence to support this claim. If this Court directs Father to pay funds related to Child's college, camp and synagogue expenses, etc., the Court will not classify these funds as child support obligations.

BY THE COURT:

GAIL WEILHEIMER, J.    12-18-14

Copies mailed on December 19, 2014 to:
**By First Class Mail:**
Deborah Zitomer, Esquire
Arnold Machles, Esquire
**By Interoffice Mail:**
Court Administration

Secretary



1992-22326-0143  10/28/2015 9:07 AM  # 10533417
Opinion
Rcpt=Z2558140  Fee:$0.00
Mark Levy - MontCo Prothonotary

**IN THE COURT OF COMMON PLEAS OF M(**

**FAMILY CO**

MIRIAM LISSER POLIS        :

       **Plaintiff/Appellee**    :      **Common Pleas Court No:**

                        :      **1992-22326**

    **vs.**                       :

                        :      **Superior Court No:**

**ROBERT BRUCE POLIS**        :      **1976 EDA 2015**

       **Defendant/Appellant**   :

# O P I N I O N

WEILHEIMER, J.                                October 28 , 2015

Defendant/Appellant, Robert Bruce Polis ("Father"), has appealed from our Order entered on May 28, 2015, granting in part and denying in part Plaintiff/Appellee's Miriam Lisser Polis's ("Mother") Petition for Contempt and Enforcement of the Parties' Property Settlement Agreement ("PSA"). Specifically, the Court held Father was not in contempt of the PSA but ordered him to pay Mother $143,350.74 pursuant to the PSA and to purchase and maintain a life insurance policy that would cover his remaining alimony arrearages of $158,000.00. For the reasons that follow, the Order is proper and should be affirmed.

## FACTS AND PROCEDURAL HISTORY

On June 1, 1992, Father and Mother entered into their PSA. The PSA provided in pertinent part:

\*    \*    \*

> [Paragraph] 5. Commencing as of June 1, 1992, and for a term of six years, [Father] agrees to pay [Mother] the sum of $4,000 per month as alimony. Said amount will be terminable in the event of [Mother's] death or remarriage. The amount and term shall not be otherwise modifiable for any reason whatsoever, including [Mother's] return to full-time employment. In addition, during the term of the alimony payments, [Father] agrees that he will be responsible for [Mother's] health care coverage and 100% of all unreimbursed medical/dental and other expenses.

[Paragraph] 6. In addition to the foregoing, and also commencing June 1, 1992, [Father] agrees to pay [Mother] as child support the sum of $4,000 per month. In addition, [Father] shall be responsible for the payment of Rachel's health care coverage plus 100% of her unreimbursed medical/dental/other expenses. In addition, he shall be responsible for Rachel [Polis's ("Child's")] camp or summer activity expense plus [Child's] synagogue expense. Moreover, [Father] agrees that he will pay the income taxes attributable to [Child's] custodial funds. At such time as [Child] goes to college, [Father] agrees that he will pay all of [Child's] undergraduate college expenses, including but not limited to room, board, tuition, transportation, clothing, books, fees, and other such expenses.

\* \* \*

[Paragraph] 9. [Father] agrees to maintain and pay for a reasonable amount of insurance coverage on his life so that in the event of his death, the alimony payments to [Mother] and the child support obligations shall be covered by said insurance. The parties agree that they will designate an appropriate amount for this purpose.

[Paragraph] 10. On account of fees, expenses and under support, [Father] agrees that he will pay [Mother] the sum of $100,000 as follows:

The sum of $22,000 within seven days of the date of this agreement; and

Thereafter, without interest, the sum of $500 per week until the full amount of $100,000 has been paid. At such time as [Mother] receives the total of $100,000 as aforesaid, she agrees to release [Father] from any and all liabilities arising out of support/alimony obligations prior to June 1, 1992.

\* \* \*

[Paragraph] 13. The agreement herein set forth shall be construed in accordance with Pennsylvania law and is intended as an overall economic resolution between the parties.

(Property Settlement Agreement at 3, 4, 5).

On June 20, 1994, the Court issued a divorce decree that incorporated the parties' PSA by reference. The decree further stated that the PSA shall not merge with, but shall survive the decree. On March 1, 1996, the Court issued an Order and an accompanying stipulation ("March

2

1996 Stipulation and Order") directing, *inter alia*, that Father's obligations under the PSA were to pay to the Montgomery County Domestic Relations Office ("DRO") (1) $4,000.00 per month in alimony for six (6) years effective June 1, 1992, (2) $4,000.00 per month in support of Child, effective June 1, 1992, and (3) $2,000.00 per month unallocated for fifty (50) months effective June 1, 1992. This resulted in an initial aggregate obligation of $10,000.00 per month. The stipulation directed that arrearages would be calculated from the effective date of June 1, 1992. Further, the stipulation directed that Father's additional obligations under the PSA were unaffected by this stipulation.

Father made minimal payments over the next several years and accumulated a significant arrearage balance. On June 7, 2000, Father filed a Petition to Modify the PSA. On May 3, 2002, Mother filed an Answer and Counter-Petition for Contempt and Enforcement of the PSA. In her Counter-Petition, Mother attempted to enforce the agreement as to payments owed by Father under the agreement, including, but not limited to, college, summer camp and synagogue expenses. On July 24, 2001, the Court issued an Order deferring action on Mother's Counter-Petition and ordered Father to pay $3,000 per month towards outstanding arrears.

On December 21, 2001, Father filed another Petition to Modify the PSA. On May 3, 2002, Mother filed an Answer and Counter-Petition for Contempt and Enforcement of the PSA. In her Counter-Petition, Mother again attempted to enforce the PSA as to payments owed by Father under the agreement, including, but not limited to, Child's college, summer camp and synagogue expenses. On May 6, 2002, the Court, following a hearing, set Father's arrearages at $600,000.00 and directed Father to pay Mother 50% of his net income from all sources but not less than $2,000.00/month ("May 2002 Order"). Despite Mother's filing of the counter-petition three (3) days prior to the hearing which requested the additional funds Mother alleges Father

3

owes her under the PSA, the record contains no indication the Court considered this request when it issued the May 2002 Order.

Following the May 2002 Order, Father consistently paid the amounts due under the Order and began to lower his arrears balance. On May 4, 2014, Mother filed a Petition for Contempt and Enforcement of the Parties' PSA ("Mother's Contempt Petition"). Mother's Contempt Petition claimed Father failed to pay amounts related to Child's college, camp and synagogue expenses as set forth in the PSA. On September 18, 2014, Father filed an Answer to Mother's Contempt Petition arguing, *inter alia*, that the obligations identified in Mother's Contempt Petition had already been addressed by the Court in the May 2002 Order. Specifically, Father claims that the $600,000.00 arrearage total determined by the Court in the May 2002 Order included all of the obligations identified in Mother's Contempt Petition.

On November 12, 2014, Father filed another Answer to Mother's Contempt Petition, however, this Answer contained New Matter. Father's New Matter raised the statute of limitations defense. On December 8, 2014, the Court held oral argument on Father's statute of limitations defense. That same date, the Court granted Father's statute of limitations defense with respect to Paragraph 10 of the PSA, which provided that Father was directed to pay $22,000.00 within seven (7) days of the date of the PSA.[1] The Court denied Father's statute of limitations defense in all other respects. On December 10, 2014, Father filed another Answer to Mother's Contempt Petition, which contained New Matter raising the defense of laches. On

---

[1] The Court was not aware at this time that Father had already paid these funds and $78,000.00 in additional funds to Mother pursuant to the March 1996 Stipulation and Order and which directed Father to pay $2,000.00 per month for fifty (50) months retroactive to June 1, 1992. This portion of the March 1996 Stipulation and Order addressed Father's obligations with respect to Paragraph 10 of the PSA.

December 11, 2014, Father filed a Praecipe to Withdraw this Answer and New Matter raising laches. Father never ended up raising a laches defense.

On December 22, 2014, the Court heard testimony with respect to Father's claim that the $600,000.00 arrearage total determined by the Court in the May 2002 Order included all of the obligations raised in Mother's Contempt Petition. The Court disagreed with Father's argument and determined that Father's obligations set forth in the PSA relating to Child's (a) college expenses, (b) unreimbursed medical/dental expenses, (c) summer camp expenses, (d) synagogue expenses and (e) Father's life insurance coverage were not included in the $600,000.00 arrearage total set forth in the May 2002 Order. This ruling necessitated a hearing on the veracity of Mother's Petition.

On May 28, 2015, the Court held Father was not in contempt of the PSA due to a mistaken but reasonable belief that all of his obligations were encompassed in the May 2002 Order. The Court did hold, however, that Father was obligated to pay $143,350.74 related to the expenses listed in the paragraph above. The Court also directed Father to purchase and maintain a life insurance policy that would cover his remaining alimony arrearages of $158,000.00.

On June 4, 2015, Father filed a Motion for Post-Trial Relief. On June 10, 2015, Father filed a Motion for Reconsideration. On June 12, 2015, Mother also filed a Motion for Reconsideration. These three motions were deemed denied by operation of law due to the Court's decision to not act on them within the thirty (30) day appeal period pursuant to Pa.R.A.P. 1701.

On June 25, 2015, Appellant filed a timely notice of appeal. On July 8, 2015, Appellant filed a timely concise statement of matters complained of on appeal ("Concise Statement")

5

pursuant to Pa.R.A.P. 1925(b). In his Concise Statement, Appellant raises the following fourteen

(14) issues:

> [WHETHER] THE HONORABLE COURT ERRED IN FAILING TO APPLY THE 4-YEAR STATUTE OF LIMITATIONS TO ALL OF [MOTHER'S] CLAIMS[?]
>
> [WHETHER] THE HONORABLE COURT ERRED IN FAILING TO DENY [MOTHER] REIMBURSEMENT FOR UNREIMBURSED MEDICAL EXPENSES WHICH WOULD BE COVERED BY [MOTHER'S] MEDICAL INSURANCE PROVIDED BY HER EMPLOYER[?]
>
> [WHETHER] THE HONORABLE COURT ERRED IN FAILING TO FIND THAT THE $600,000.00 DETERMINED AS OWED FOLLOWING HEARING BEFORE JUDGE MOORE ON MAY 6, 2002 INCLUDED ALL NOW CLAIMED BY [APPELLEE] THAT WERE PAID OR INCURRED PRIOR TO THAT DATE[?]
>
> [WHETHER] THE HONORABLE COURT ERRED IN REFUSING TO CONSIDER THE TESTIMONY OF [FATHER] THAT THE PARTIES AND ATTORNEYS AGREED THAT THE $600,00.00 FIGURE PROVIDED TO JUDGE MOORE INCLUDED ALL HIS OBLIGATION UNDER THE PROPERTY SETTLEMENT AGREEMENT [THROUGH] MAY 6, 2002 [WHEN THIS COURT STATED] THAT IT WAS HEARSAY WHEN NO HEARSAY OBJECTION WAS MADE[?]
>
> [WHETHER] THE HONORABLE COURT ERRED IN FAILING TO FIND THAT THE $600,000.00 ARREARS FOUND AS OF MAY 6, 2002 INCLUDED ALL OF THE ADDITONAL EXPENSES SINCE ALIMONY AND CHILD SUPPORT HAD ACCRUED TO THE SUM OF $599,059.12 AS OF APRIL 6, 2000 AS SHOWN ON EXHIBIT W5 AT THE HEARING OF DECEMBER 15, 2014[?]
>
> [WHETHER] THE HONORABLE COURT ERRED IN FAILING TO FIND THAT THE COLLEGE AND RELATED EXPENSES, SYNAGOGUE, CAMP AND MEDICAL EXPENSES WERE INCLUDED IN THE $600,000.00 ARREARS SET AT THE HEARING BEFORE JUDGE MOORE ON MAY 6, 2002 WHEN THE SAME HAD ALL BEEN RAISED IN [MOTHER'S] PLEADING FILED BEFORE MAY 6, 2002[?]
>
> [WHETHER] THE HONORABLE COURT ERRED IN FAILING TO FIND THAT [MOTHER] AND THE PARTIES' DAUGHTER

6

FORFEITED ENTITLEMENT TO COLLEGE AND RELATED EXPENSES BY ESTRANGEMENT[?]

[WHETHER] THE HONORABLE COURT ERRED IN REFUSING TO ALLOW EVIDENCE OF ESTRANGEMENT[?]

[WHETHER] THE HONORABLE COURT ERRED IN FAILING TO FIND THAT [MOTHER] AND RACHEL POLIS FORFEITED ENTITLEMENT TO COLLEGE EXPENSES BY FAILING TO INCLUDE [FATHER] IN THE DECISION CONCERNING COLLEGE[?]

[WHETHER] THE HONORABLE COURT ERRED IN FAILING TO FIND THAT THE COLLEGE FUND WAS FUNDED BY [FATHER] AND THEREFORE RELIEVED HIM OF ANY OBLIGATIONS FOR COLLEGE OR RELATED EXPENSES[?]

[WHETHER] THE HONORABLE COURT ERRED IN FAILING TO FIND THAT [FATHER] SET UP AND FUNDED THE UGMA ACCOUNT WHEN [MOTHER] TESTIFIED THAT [FATHER] AND HIS FATHER SET UP THE NEW JERSEY ACCOUNTS [OF WHICH THE UGMA ACCOUNT WAS ONE] AND THAT SHE, [APPELLEE], HAD NO KNOWLEDGE OF SAME[?]

[WHETHER] THE HONORABLE COURT ERRED IN FINDING THE TESTIMONY OF [MOTHER] CREDIBLE CONSIDERING THAT SAME IS INCONSISTENT WITH HER PLEADING IN WHICH SHE ATTACHED SUPPOSED EXPENSES FOR COLLEGE, ETC. THAT ARE CLEARLY FALSE[?]

[WHETHER] THE HONORABLE COURT ERRED IN FAILING TO FIND THAT INSURANCE WAS ONLY OWED FOR THE TERM SPECIFIED IN THE PROPERTY SETTLEMENT AGREEMENT IN PARAGRAPHS 5 AND 6[?]

[WHETHER] THE HONORABLE COURT ERRED IN FAILING TO FIND THAT NO LIFE INSURANCE IS OWED BY [FATHER] SINCE NO "APPROPRIATE AMOUNT" WAS EVER DESIGNATED BY THE PARTIES[?]

(Father's Concise Statement).[2]

Prior to addressing Father's fourteen (14) issues raised on appeal:

---

[2] For ease of disposition, we will address issues #3, 4, 5 and 6 first. We will also address issues 7, 8 and 9 together and issues 10, 11 and 12 together.

7

> [W]e find it necessary to reiterate former Justice Sandra Newman's admonishment to all appellate advocates who labor under the misguided belief that raising as many issues as possible constitutes effective appellate advocacy: The approach to appellate advocacy embarked on by present counsel for Appellant brings to mind the words of the Honorable Ruggero J. Aldisert of the United States Court of Appeals for the Third Circuit: With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. I have said in open court that when I read an appellant's brief that contains ten or twelve points, a presumption arises that there is no merit to **any** of them...[and] it is [this] presumption...that reduces the effectiveness of appellate advocacy.

*Commonwealth v. Best*, 120 A.3d 329, 340 (Pa.Super. 2015) (emphasis in original) (internal citation omitted).

## DISCUSSION

A trial court's findings on a contempt petition will not be disturbed absent an abuse of discretion. *Guadagnino v. Montie*, 646 A.2d 1257, 1259 (Pa.Super. 1994). An abuse of discretion occurs when the trial court either overrides or misapplies the law, its judgment is manifestly unreasonable, or the evidence shows that the court's decision is the result of partiality, prejudice, bias or ill will. *Holderman v. Hagner*, 760 A.2d 1189, 1192 (Pa.Super. 2000).

With respect to Father's fourth, fifth and sixth issues, we incorporate our Memorandum Opinion and Order dated December 18, 2014, which contains the reasoning behind our rulings on these issues. The Court also wishes to supplement its analysis with respect to these issues. At the December 22, 2014 hearing and in his filings leading up to the hearing, Father argued an audit performed by DRO indicated the Court had included totals attributable to Child's (1) college expenses, (2) unreimbursed medical/dental expenses, (3) summer camp expenses, (4) synagogue expenses, and (5) Father's life insurance coverage in his running arrearage total. An examination of this audit, however, indicated the figures listed in the audit correspond perfectly

to paragraphs 5, 10 and the first half of paragraph 6 of the PSA, and result in an arrearage total of $600,000 at the time of the May 2002 Order. Including the expenses listed above would have resulted in a much higher arrearage total as of May 2002.

Regarding the Court's *sua sponte* ruling that Father's testimony regarding a discussion he overheard between his attorney and Wife's attorney would constitute inadmissible hearsay, we observe that "[q]uestions concerning the admission and exclusion of evidence are within the sound discretion of the trial court and will not be reversed on appeal absent an abuse of discretion." *In Re Adoption of D.M.H.*, 682 A.2d 315, 321 (Pa.Super. 1996) (internal citation omitted). A court is permitted to preclude inadmissible hearsay testimony *sua sponte*. *In re R.T.*, 778 A.2d 670, 682 (Pa.Super. 2001).

In his first issue, Father argues Wife's claims are not permitted under the statute of limitations. We disagree. The statute of limitations period for a breach of contract claim is four years. 42 Pa.C.S.A. § 5525. "Where the contract is a continuing one, the statute of limitations runs from the time when the breach occurs or when the contract is in some way terminated." *Cole v. Lawrence,* 701 A.2d 987, 989 (Pa.Super. 1997) (*citing Thorpe v. Schoebrun*, 195 A.2d 870, 872 (Pa.Super. 1963). For the purposes of computing the statute of limitations, a contract is continuing when there is no fixed time for payment or termination of its services. *Id.* "[I]n the case of continuing contracts, such as postnuptial agreements, where the duties of the parties are ongoing, the statute of limitations generally does not run." *Crispo v. Crispo*, 909 A.2d 308, 315 (Pa.Super. 2006) (internal citation omitted). In *Crispo*, the marital settlement agreement included no specific deadline by which Husband's contractual obligations to Wife would be paid and also did not identify any specific amounts owed.

9

Similarly, in *Miller v. Miller*, 983 A.2d 736 (Pa.Super. 2009), a husband and wife entered into a post-nuptial agreement in 1994 in which husband agreed to pay the mortgage, taxes, and insurance on the marital residence until it was sold. The wife brought suit in 2005 because her husband's alleged breach of the agreement. *Id.* at 738-39. On appeal, the Superior Court rejected husband's argument that statute of limitations barred any claim prior to the four-year limitations period, concluding that the postnuptial agreement was a continuing contract because it did not set forth deadlines for payment of the mortgage, taxes, and insurance or specify the amounts of payments to be made. *Id.* at 742-43.

Here, as in *Crispo* and *Miller*, the PSA did not provide any specific deadlines for Father to pay for (1) college expenses, (2) unreimbursed medical/dental expenses, (3) summer camp expenses, (4) synagogue expenses, and (5) life insurance coverage, and did it set forth any specific amounts Father must pay. Thus, the PSA in the instant matter is a continuing contract and Appellant's statute of limitations defense is inapplicable. *See id.*[3]

In his second issue, Father argues Mother should have been denied reimbursement for unreimbursed medical expenses that would have been covered by medical insurance offered by her employer. We disagree. Paragraph 5 of the PSA clearly states Father is responsible for Mother's healthcare coverage and 100% of all unreimbursed medical/dental and other expenses. Further, Father's counsel performed only a cursory cross-examination of Mother regarding

---

[3] Father cited to *Fina v. Fina*, 737 A.2d 760 (Pa.Super. 1999) during oral argument in December 2014 to support his argument that the PSA in this instant matter is not a continuing contract. In *Fina*, the Superior Court held a mother's claim against her husband based upon property settlement agreement which contained provisions for the father to pay his child's dental bills was barred by the statute of limitations where the mother failed to file a claim within four (4) years of the father's alleged breach. We observe the Court's holding is distinguishable from the instant case where the mother did not appear to raise a continuing contract defense. Further, we could not find any instances of the Superior Court relying on *Fina* in any subsequent cases involving the question of whether property settlement agreements constitute a continuing contract.

10

medical insurance she could have acquired through the school district that employed her. *See* N.T. Hearing, 5/12/15, at 35-37). Mother was not required to obtain insurance to cover her unreimbursed medical expenses, and Father's counsel's questioning did not establish that insurance provided by Mother's employer was a viable option.

In his seventh, eighth and ninth issues, Father argues the Court erred when it failed to consider evidence of Father's estrangement from his daughter. We disagree. While a parent has no legal duty to support his or her child's post-secondary education under the current state of Pennsylvania law, an agreement to assume the duty to provide post-majority educational support is enforceable at law. *Reif v. Reif*, 626 A.2d 169, 173 (Pa.Super. 1993). The law is clear that estrangement is not a defense where the obligation to pay college expenses is based upon a contract. *Trunkwalter v. Trunkwalter*, 617 A.2d 1308, 1309 (Pa.Super. 1992). If parties intend for a party's college support obligation to be contingent on a continuing relationship with the child, it should be included in the agreement. *Cook v. Covey*, 609 A.2d 560, 563 (Pa.Super. 1992).

Instantly, the PSA simply states when the parties' child goes to college, Father agrees he will pay all of her undergraduate expenses. There was no clause stating the PSA should be construed under Pennsylvania law, which was in effect as of the date of the agreement, or that the agreement was conditioned on a continuing relationship with the child. There also were no clauses stating the parties must mutually consent to the institution their child should attend, thereby precluding an examination of whether Mother and child had an obligation to include Father in the decision concerning college. Father simply agreed to pay for his daughter's college expenses with no conditions attached. Thus, Father is precluded from raising an estrangement defense with respect to his obligation to pay for his child's college expenses. *See id.*

11

With respect to Father's tenth, eleventh and twelfth issues, we incorporate our Memorandum Opinion and Order dated May 28, 2015, which contains the reasoning behind our ruling on this issue. The Court also wishes to supplement its analysis with respect to these issues. Ordinarily, "[i]t is well established that the credibility of witnesses is an issue to be determined by the trier of fact. On appeal this Court will not revisit the trial court's determinations ... regarding the credibility of the parties. Thus, [an] argument, which would require this Court to revisit and essentially reverse the [trial court] on his credibility determinations, provides no grounds for relief." *Woods v. Cicierski*, 937 A.2d 1103, 1105 (Pa.Super.2007) (internal citations omitted).

Instantly, Mother testified regarding college expenses for the parties' child and provided exhibits detailing the amount of tuition she paid each month, which the Court deemed credible despite Father's argument that these amounts were allegedly inconsistent with her prior pleadings. Further, the Court did not find Father's testimony regarding his UGMA account to be credible. Father could not provide any account statements, and the testimony offered by Father and his friend did not persuade the Court this account ever existed. Accordingly, Father has no grounds for relief with respect to issues ten, eleven, and twelve. *See id.*

With respect to Father's thirteenth issue, it was extremely difficult for the Court to determine his exact allegations of error and has made it all but impossible for the Court to provide a comprehensive analysis on the issue. "When a court has to guess what issues an appellant is appealing, that is not enough for meaningful review." *Commonwealth v. Dowling*, 778 A.2d 683, 686 (Pa.Super. 2001), *citing Giles v. Douglass*, 747 A.2d 1236, 1237 (Pa.Super. 2000). "When an appellant fails adequately to identify in a concise manner the issues sought to be pursued on appeal, the trial court is impeded in its preparation of a legal analysis which is

12

pertinent to those issues." ***Dowling*** at 686, ***citing In re Estate of Daubert***, 757 A.2d 962, 963 (Pa.Super. 2000). Consequently, the Court holds that Father's thirteenth issue is waived.

In Father's fourteenth issue, he argues he does not owe life insurance because "no appropriate amount" was ever designated by the parties. We disagree. Paragraph 9 of the PSA provides Father shall pay for a reasonable amount of life insurance so that, in the event of his death, the alimony payments to his wife and child support obligations shall be covered. Although the parties never designated an appropriate amount for this purpose, reading the plain language of the contract allows the Court to require Father to fund an insurance policy that will cover his remaining alimony obligations.

With respect to an issue that Father did not raise in his concise statement, the Court's decision not to hold Father in contempt of the PSA but to instead enforce the provisions of the PSA appears to run counter to the Superior Court's holding in ***Gaster v. Gaster***, 703 A.2d 513 (Pa.Super. 1997). In ***Gaster***, this Court held an appeal may not be taken in a contempt action where the trial court neither made a finding of contempt nor imposed sanctions. This Court vacated the order, holding it was interlocutory and not appealable. In ***Fina, supra***, however, this Court refused to accept the ***Gaster*** holding, reasoning that, in drafting the divorce code, the legislature granted courts broad authority to adjudicate matters arising under private settlement agreements. ***Id.*** at 763 FN1. Accordingly, this Court did not find the trial court's order as not appealable.

## CONCLUSION

For the reasons set forth above, the decision was proper and should be affirmed.

BY THE COURT:

GAIL WEILHEIMER, J.

Copies of this Opinion
Mailed to the following on 10/28/15:

Superior Court Prothonotary
Court Administration
Deborah Zitomer, Esquire
Arnold Machles, Esquire

Secretary

14

A-3